CLARK, C. J., dissenting.
Criminal prosecution, tried upon an indictment charging the defendant with embezzling $350 and a Studebaker automobile on 27 February, 1918, alleged to be the property of one Willie Waters, denominated in the record as "nominal prosecutor."
The State's evidence, if believed, showed that the defendant Flowers, in 1918, sold to the prosecuting witness, Willie Waters, an automobile for $475. Waters paid $350 cash and gave a note and mortgage on the car for $125. A few days later Waters, being a shoemaker, and finding that he could not operate the car, applied to the defendant to take it back. The defendant agreed to do so upon Waters appointing him, the defendant, his agent to sell the car. The oral agreement was that the proceeds of the sale of the car should first be applied to the payment of the $125 note, then the remainder of it, to the extent of $350 paid in cash by Waters, was to be returned to Waters.
This alleged agreement was denied by the defendant, and he offered in evidence the following written contract, which Waters admitted he signed at the time the machine was returned to the defendant:
"This paper made this 4 March, 1918, by Willie Waters of Duplin County and State of North Carolina, party of the first part, and John Flowers of Duplin County and State of North Carolina, of the second part:
"Witnesseth, that in consideration of the party of the second part releasing the party of the first part of notes held on an automobile which the party of the second part sold to the party of the first, the party of the first part does hereby transfer the said automobile back to the party of the second part, and the party of the second part does this day release party of the first part of said notes.
"Witness my hand and seal the day and date first above written.
"Witness: JAMES POWERS. W. S. WATERS. [SEAL.]"
The defendant then took the car and returned it to one J. E. Clayton, from whom he had purchased it, and who held a purchase-money mortgage upon the automobile, amounting to $400, taking from Clayton in payment of the same his canceled notes and mortgage.
Under these circumstances, and after the lapse of nearly four years, the defendant was convicted of having embezzled the automobile and the sum of $350, and was sentenced to jail for a period of two years, to be assigned to work on the public roads. Defendant appealed, assigning errors.
After stating the case: At the trial, defendant sought to show that this prosecution was instituted at the instance of one Eugene Boney, against whom the defendant had filed suit in the early part of 1920, to recover from him a valuable tract of land.
As bearing upon the weight and credibility of the testimony of the prosecuting witness, he was asked the following questions on cross-examination:
"Q. Is not Mr. Boney furnishing you with money to prosecute this case?"
Objection by the State sustained; defendant excepted. Defendant expected the witness to answer in the affirmative.
"Q. Has Mr. Boney employed any of counsel in this case?"
Objection by the State sustained; defendant excepted. There were four lawyers appearing with the solicitor for the State, and defendant expected an affirmative answer.
"Q. At the time prosecution started, did you not know that Eugene Boney had a lawsuit with defendant about a piece of land?"
Objection by the State sustained; defendant excepted. Defendant expected an affirmative answer.
Defendant further sought to show on cross-examination of this witness that, upon the preliminary hearing, defendant was discharged for want of probable cause, and Waters was taxed with the costs; that immediately after the preliminary trial, counsel for defendant was assaulted by Eugene Boney, with a knife, because his name had been mentioned in the trial. This evidence was excluded upon objection, and defendant excepted.
The defendant further sought to show, by his own evidence, that at the time of his arrest the officer presented to him for execution a deed from himself and wife to Eugene Boney for the land in controversy in the civil action, stating that he had been instructed not to serve the warrant if the deed were executed. This evidence was excluded.
The witness was not permitted to answer the following questions:
"Q. At the preliminary hearing of this matter, Esquire Powers discharged you and taxed Waters with the costs?"
Objection by the State sustained; defendant excepted. Witness would have answered "Yes."
"Q. Did Mr. Eugene Boney assault Mr. Ward, your counsel, after the preliminary trial, and violently curse him for having mentioned his name?"
Objection by the State sustained; defendant excepted. Witness would have answered "Yes."
"Q. Did Eugene Boney talk to you here at term of court at which this bill was found?" *Page 691 
Objection by the State sustained; defendant excepted. Witness would have answered "Yes; Boney said they were going to indict me and if I would sign the deed to him there would be no more of it. I didn't sign the deed, and I was arrested on a capias under this bill of indictment. "
There was other evidence offered and excluded, tending to show that Boney was the real prosecutor in the case, and that Waters was acting in his behalf and at his request. While some of this evidence may have been excluded, and rightly so, by reason of the form and manner in which it was presented, yet, in the main, it was pertinent and clearly competent as bearing upon the good faith of the prosecution and the weight and credibility of the evidence of the nominal prosecutor, Willie Waters. It should be observed that Waters' testimony, upon whose evidence alone the defendant was convicted, is in direct conflict with the terms of the written bill of sale which he signed on 4 March, 1918.
The defendant was entitled to have the jury consider the real facts in the case; and, if the above excluded testimony be worthy of belief, there can be no doubt as to who was the real prosecutor. This is so plain "that he may run that readeth it." Habakkuk, 2:2.
Again, there is no evidence on the record tending to show any embezzlement of the $350. This sum was paid to the defendant by the prosecuting witness at the time he purchased the car, and in no view of the evidence could he have been convicted on this count.
For the error, as indicated, there must be a new trial, or a venire denovo.
New trial.